## CONCLUSION

Because no error was assigned to TERC's determination that Krings' land was nonagricultural and nonhorticultural, we affirm that portion of TERC's order in which it so concluded. There is also no challenge to the correctness of the determination that a small portion of the property was agricultural and horticultural and that it was subject to equalization with other agricultural and horticultural land in the county, and we enter no order affecting this decision. We conclude that TERC erred when it equalized the value of Krings' nonagricultural, nonhorticultural land with the value of agricultural and horticultural land in the county. TERC's decision to equalize in this fashion did not conform to the law. We therefore reverse those portions of the order in which TERC reversed the Board's valuation regarding Krings' nonagricultural, nonhorticultural property and performed such equalization. We remand the cause to TERC with directions to enter an order ruling on the Board's determinations, consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

CONNOLLY and MILLER-LERMAN, JJ., participating on briefs.

---

STATE OF NEBRASKA, APPELLEE, V.
MATTHEW L. PANGBORN, APPELLANT.
___ N.W.2d ___

Filed July 26, 2013.    No. S-12-941.

1. **Trial: Evidence: Appeal and Error.** The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion.
2. **Trial: Juries: Evidence.** Demonstrative exhibits are defined by the purpose for which they are offered at trial—to aid or assist the jury in understanding the evidence or issues in a case.
3. **Trial: Evidence.** Exhibits admitted only for demonstrative purposes do not constitute substantive evidence.
4. **Rules of Evidence.** Where a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal

decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule.

5. **Trial: Judges.** In Nebraska, a trial judge has broad discretion over the conduct of a trial.

6. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

7. **Trial: Judges: Juries: Evidence.** A trial judge may exercise his or her broad judicial discretion to allow or disallow the use of demonstrative exhibits during jury deliberations.

8. ____: ____: ____: ____. It is an abuse of discretion for a trial judge to send a demonstrative exhibit to the jury for use in deliberations without first weighing the potential prejudice in allowing such use against the usefulness of the exhibit and employing adequate safeguards to prevent prejudice.

9. **Criminal Law: Appeal and Error.** Errors, other than structural errors, which occur within the trial and sentencing process, are subject to harmless error review.

10. **Criminal Law: Trial: Juries: Appeal and Error.** In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.

11. **Criminal Law: Juries: Evidence: Appeal and Error.** In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.

12. **Verdicts: Juries: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

13. **Constitutional Law: Criminal Law: Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clauses of the federal and state Constitutions do not forbid a retrial after an appellate determination of prejudicial error in a criminal trial so long as the sum of all the evidence admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

15. ____. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.

Appeal from the District Court for Gage County: Paul W. Korslund, Judge. Reversed and remanded for a new trial.

Brett McArthur for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Stephan, McCormack, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

Matthew L. Pangborn appeals from his convictions and sentences on nine counts involving actual or attempted violence or physical abuse upon "persons with intellectual disabilities who require[d] residential care."[1] The main question presented is whether the district court abused its discretion in allowing the jury to use in its deliberations the State's "road map"—a chart admitted for demonstrative purposes only. Because the district court allowed the use of this demonstrative exhibit in jury deliberations without providing adequate limiting instructions or employing any other safeguards against prejudice, we find that the court abused its discretion. We reverse, and remand for a new trial.

## II. BACKGROUND

In October 2011, a complaint was filed in county court charging Pangborn with six counts of abuse of a vulnerable adult and five counts of strangulation. All counts arose from Pangborn's employment at the Beatrice State Developmental Center (BSDC) in Beatrice, Nebraska, and involved three adult residents at that facility. The parties stipulated that all three alleged victims were vulnerable adults as defined by statute. After a hearing in county court, Pangborn was bound over to the district court for arraignment. He entered pleas of "not guilty" to all 11 counts. One count of strangulation was later dismissed with prejudice at the State's request.

A jury trial on the remaining 10 counts was held over several days in July 2012. During the trial, eight witnesses testified and numerous exhibits were admitted into evidence. In particular, exhibit 36 was central to presentation of the State's case. Having prepared the exhibit as a "road map" of its case, the State repeatedly relied upon exhibit 36 when delivering opening and closing statements and when examining

---

[1] See 2013 Neb. Laws, L.B. 23, § 50 (prior version codified at Neb. Rev. Stat. § 83-217 (Reissue 2008)).

and cross-examining witnesses. Exhibit 36 was admitted for demonstrative purposes only, but later was submitted to the jury for use during deliberations, over Pangborn's objection. Two other exhibits are relevant for purposes of appeal. Exhibits 37 and 38 consisted of timesheets from BSDC and were admitted under the business records exception to the hearsay rule, which admission Pangborn assigns as error.

Before we more thoroughly describe the circumstances surrounding the use of exhibit 36—circumstances which are critical to our analysis—we provide a detailed description of the exhibit. Exhibit 36 was a one-page chart that the State described as providing a "road map" that it would use "during the course of the trial for clarification purposes only." It consisted of five columns labeled "COUNT," "VICTIM," "WITNESS," "LOCATION," and "INJURY." Each of the 11 original charges was listed in the column labeled "COUNT." For each count, the remaining columns identified the BSDC resident who was the alleged victim, the individual who supposedly witnessed Pangborn's abuse upon the victim (all of whom testified at trial to what they saw), the exact location where the alleged abuse was witnessed, and the precise nature of the violence allegedly inflicted upon the victim by Pangborn. These injuries were identified in the fifth column of the chart as "[s]truck on top of head," "[s]truck on ear," "[e]lbowed in chest," "[c]hoked unconscious," or "[c]hoked." Essentially, the exhibit was a concise summary of the evidence the State planned to present against Pangborn on each count—hence, a "road map."

The morning of trial, the parties discussed the proposed exhibit 36 with the district court in the absence of the jury. Pangborn had no objection to the use of exhibit 36 for demonstrative purposes, but moved that the jury not be allowed to use the exhibit during deliberations. At that time, the court received exhibit 36 for demonstrative purposes, but held that the exhibit could not be used during deliberations. The court did not communicate this ruling to the jury in any way but merely asked the State to "offer" exhibit 36 before publishing it to the jury at trial and noted that the court might revisit the issue of use during deliberations at a later time.

Throughout the trial that followed, the State relied heavily upon its "road map" in presenting its case against Pangborn. Despite this extensive usage of the exhibit, the district court did not explain to the jury the limited purpose of the exhibit, distinguish it from other substantive exhibits, or provide any guidance regarding its proper use.

Early in its opening statement, the State first displayed exhibit 36 to the jury. But the State did not offer the exhibit as the district court had requested or ask for permission to publish. The only explanation provided for the exhibit was the following statement made by the State during opening arguments: "In order to help you try to work through this, we have prepared what we are calling a road map, and we encourage you to utilize this. It's been stipulated to by the parties and provided also to the judge . . . ." The court neither clarified nor elaborated upon the State's minimal explanation.

Although the record is not precisely clear about each instance when exhibit 36 was used during the remainder of the trial, the briefs suggest that exhibit 36 was employed by the State throughout the examination and cross-examination of witnesses and was frequently displayed to the jury. Neither the State nor the district court identified exhibit 36 as having previously been admitted for demonstrative purposes at any point during the trial.

At the conclusion of all evidence, the district court held an in-chambers jury instruction conference. During that conference, the court announced that it was going "to take up on [its] own motion the matter of Exhibit 36." Because it found that exhibit 36 "would be very helpful to the jury to have and would not be prejudicial, although, it is a demonstrative exhibit," the court ruled that the jury would be allowed to use exhibit 36 during deliberations. Pangborn objected, but his objection was overruled. Neither this ruling nor any other explanation regarding the use of exhibit 36 during deliberations was communicated to the jury.

Following closing arguments, the district court gave jury instructions and submitted the case to the jury. The court's instructions to the jury included the standard jury instruction on exhibits admitted for limited purposes: "During the trial[,]

I called your attention to some evidence that was received for a specific limited purpose; you must consider that evidence only for those limited purposes and for no other." Significantly, however, the instructions given by the court failed to identify that exhibit 36 had been admitted for the limited purpose of a demonstrative exhibit. And, as noted earlier, the court initially admitted exhibit 36 outside the presence of the jury and never informed the jury at any point during the trial that the exhibit was admitted only for demonstrative purposes.

After deliberation, the jury found Pangborn guilty on four counts of abuse of a vulnerable adult, one count of attempted abuse of a vulnerable adult, three counts of strangulation, and one count of attempted strangulation. The jury found Pangborn not guilty of one count of abuse of a vulnerable adult. After unsuccessfully moving for a new trial, Pangborn was sentenced to an aggregate sentence of 15 to 23 years' imprisonment.

Pangborn timely appeals. Pursuant to statutory authority, we moved the case to our docket.[2]

## III. ASSIGNMENTS OF ERROR

Pangborn chiefly assigns that the district court abused its discretion in permitting the jury to take exhibit 36 into the jury room for use during deliberations. Pangborn also assigns, reordered and restated, that the court erred in admitting exhibits 37 and 38, that there was insufficient evidence to support the verdicts, and that he received excessive sentences. Because we find reversible error, we reach only the assignment of error regarding the demonstrative exhibit.

## IV. STANDARD OF REVIEW

[1] The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion.[3]

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[3] *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011).

## V. ANALYSIS

### 1. Use of Demonstrative Exhibit During Deliberations

#### (a) Issue on Appeal

Pangborn argues that the district court abused its discretion in allowing the jury to take a demonstrative exhibit into the jury room for use during deliberations. The relevant demonstrative exhibit—exhibit 36—was the State's "road map" of its case against Pangborn. Initially, the court admitted exhibit 36 for demonstrative purposes only. This occurred prior to the start of trial and out of the presence of the jury. At that time, Pangborn agreed to the admission of exhibit 36 for demonstrative purposes only. However, at the conclusion of evidence and over Pangborn's objection, the court ruled upon its own motion that the jury would be allowed to take exhibit 36 into the jury room for deliberations. At no point during the trial itself or during final jury instructions did the court inform the jury that exhibit 36 was admitted for demonstrative purposes or provide a limiting instruction specific to exhibit 36. We must decide whether this was an abuse of the court's discretion.

Pangborn does not challenge the actual admission of exhibit 36 into evidence for demonstrative purposes or its use during trial. He assigns error only to its use during deliberations. However, before reaching the question whether demonstrative exhibits can be used during jury deliberations, we must first clarify what is meant by the "admission" of a demonstrative exhibit.

#### (b) Admission of Demonstrative Exhibits

We historically have discussed the use of demonstrative exhibits in terms of admissibility. In *Benzel v. Keller Indus.*,[4] we adopted "principles for determining the admissibility of demonstrative exhibits in civil cases" and held that "demonstrative exhibits are admissible if they supplement the witness'

---

[4] *Benzel v. Keller Indus.*, 253 Neb. 20, 28, 567 N.W.2d 552, 558 (1997).

spoken description of the transpired event, clarify some issue in the case, and are more probative than prejudicial." Conversely, we stated that "[d]emonstrative exhibits are inadmissible when they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant, or where the exhibit's character is such that its probative value is substantially outweighed by the danger of unfair prejudice."[5] Based upon these principles, we have discussed in other cases whether demonstrative exhibits are "admissible"[6] and whether their "admission" is an abuse of discretion.[7]

[2] But the use of such terminology can be misleading. Demonstrative exhibits are broadly defined as aids "offered to illustrate or explain the testimony of witnesses, including experts, or to present a summary or chronology of complex or voluminous documents."[8] Our case law specifically defines demonstrative exhibits as those that "clarify some issue in the case."[9] As these definitions highlight, demonstrative exhibits are defined by the purpose for which they are offered at trial—to aid or assist the jury in understanding the evidence or issues in a case.[10] "They are relevant . . . only because of the assistance they give to the trier in understanding other real, testimonial and documentary evidence."[11] Thus, even though demonstrative exhibits may be "admitted" into evidence during the course of the trial, they serve a purpose distinct from other exhibits admitted for substantive and not merely demonstrative

---

[5] *Id.*

[6] *State v. Daly*, 278 Neb. 903, 925, 775 N.W.2d 47, 66 (2009). Accord *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007), *abrogated on other grounds*, *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[7] *American Central City v. Joint Antelope Valley Auth.*, *supra* note 3, 281 Neb. at 756, 807 N.W.2d at 182. Accord, *State v. Daly, supra* note 6; *State v. Gutierrez, supra* note 6.

[8] 2 McCormick on Evidence § 214 at 18 (Kenneth S. Broun et al. eds., 7th ed. 2013).

[9] *Benzel v. Keller Indus.*, *supra* note 4, 253 Neb. at 28, 567 N.W.2d at 558.

[10] See 2 McCormick on Evidence, *supra* note 8.

[11] *Id.*, § 214 at 19.

purposes. For this reason, some courts refer to demonstrative exhibits as "pedagogical aid[s]"[12] or "pedagogical devices"[13] so as to highlight this difference in purpose.

[3] Due to the difference in purpose, an exhibit admitted for a demonstrative purpose—that is, to aid the jury—is not evidence in the same way that an exhibit admitted for a substantive purpose—that is, as proof of an underlying fact or occurrence—is evidence. Our case law does not state that demonstrative exhibits are not to be considered as substantive evidence. However, a majority of circuit courts have so held,[14] and the major evidence treatises agree.[15] We likewise agree with this proposition and now hold that exhibits admitted only for demonstrative purposes do not constitute substantive evidence.

### (c) Demonstrative Exhibits in Jury Deliberations

Just because demonstrative exhibits are not substantive evidence does not mean that they should be excluded automatically from jury deliberations. As mentioned earlier, the explicit purpose of a demonstrative exhibit is to aid the jury

---

[12] See, e.g., *U.S. v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006). See, also, *U.S. v. Buck*, 324 F.3d 786 (5th Cir. 2003).

[13] See, e.g., *U.S. v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998). See, also, *U.S. v. Harms*, 442 F.3d 367 (5th Cir. 2006); *U.S. v. Janati*, 374 F.3d 263 (4th Cir. 2004).

[14] See, e.g., *U.S. v. Milkiewicz, supra* note 12; *U.S. v. Harms*, *supra* note 13; *U.S. v. Janati*, *supra* note 13; *U.S. v. Bray, supra* note 13; *U.S. v. Wood*, 943 F.2d 1048 (9th Cir. 1991); *U.S. v. Casamento*, 887 F.2d 1141 (2d Cir. 1989); *Conford v. United States*, 336 F.2d 285 (10th Cir. 1964); *Ratner v. Arrington*, 111 So. 2d 82 (Fla. App. 1959); *Smith v. Ohio Oil Co.*, 10 Ill. App. 2d 67, 134 N.E.2d 526 (1956); *In re Estate of Lucitte*, No. L-10-1136, 2012 WL 362002 (Ohio App. Feb. 3, 2012) (unpublished opinion); *Christensen v. Cober*, 206 Or. App. 719, 138 P.3d 918 (2006); *Markey v. State*, 996 S.W.2d 226 (Tex. App. 1999); *State v. Lord*, 117 Wash. 2d 829, 822 P.2d 177 (1991) (en banc).

[15] See, 2 McCormick on Evidence, *supra* note 8; 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 611.02[2][a][vii] (Joseph M. McLaughlin ed., 2d ed. 2011).

in its consideration of the evidence and issues in a case.[16] Undoubtedly, in a complex case, demonstrative exhibits would be most helpful when the jury considers the totality of the evidence during deliberations. As the Seventh Circuit has stated, demonstrative exhibits "often are useful tools that enable the jury to visualize and organize the large volume of data produced by trial testimony."[17]

Precisely because demonstrative exhibits can be exceedingly useful, many courts allow demonstrative exhibits to be used in jury deliberations under certain circumstances.[18] Although the Nebraska Court of Appeals has tangentially discussed matters pertinent to the use of demonstrative exhibits in jury deliberations, it did not reach the exact issue presented by the present appeal.[19] Thus, because this is an issue of first impression in Nebraska, we review the pertinent case law from other jurisdictions.

---

[16] See 2 McCormick on Evidence, *supra* note 8.

[17] *United States v. Radtke*, 799 F.2d 298, 311 (7th Cir. 1986) (Flaum, Circuit Judge, concurring in part, and in part dissenting).

[18] See, e.g., *U.S. v. Milkiewicz, supra* note 12; *U.S. v. Harms, supra* note 13; *U.S. v. Salerno*, 108 F.3d 730 (7th Cir. 1997); *U.S. v. Johnson*, 54 F.3d 1150 (4th Cir. 1995); *U.S. v. Casamento, supra* note 14; *United States v. Scales*, 594 F.2d 558 (6th Cir. 1979); *United States v. Downen*, 496 F.2d 314 (10th Cir. 1974); *United States v. Warner*, 428 F.2d 730 (8th Cir. 1970); *Shane v. Warner Mfg. Corp.*, 229 F.2d 207 (3d Cir. 1956); *Rossell v. Volkswagen of America*, 147 Ariz. 160, 709 P.2d 517 (1985); *Williams v. First Security Bank of Searcy*, 293 Ark. 388, 738 S.W.2d 99 (1987); *Higgins v. L. A. Gas & Electric Co.*, 159 Cal. 651, 115 P. 313 (1911); *People v. Manley*, 133 Ill. App. 2d 882, 272 N.E.2d 411 (1971); *Pearson v. State*, 441 N.E.2d 468 (Ind. 1982); *State v. Yowell*, 513 S.W.2d 397 (Mo. 1974), (superseded by statute on other grounds as stated in *State v. Milliorn*, 794 S.W.2d 181 (Mo. 1990)); *In re Estate of Lucitte, supra* note 14; *Lord v. State*, Nos. A-1586, 1HA-S84-84CR, 1989 WL 1595110 (Alaska App. Sept. 6, 1989) (unpublished memorandum opinion); *State v. Evans*, No. 376614-4-I, 1998 WL 184909 (Wash. App. Apr. 20, 1998) (unpublished disposition listed at 90 Wash. App. 1028 (1998)).

[19] See *McFadden v. Winters & Merchant, Inc.*, 8 Neb. App. 870, 603 N.W.2d 31 (1999).

### (i) Approaches of Other Jurisdictions

#### a. Federal Case Law

Allowing or disallowing the use of demonstrative exhibits in deliberations usually is a matter of discretion.[20] Rule 611(a) of the Federal Rules of Evidence—the federal rule governing the mode of presenting evidence in court—is regularly cited as giving courts general discretion over the use of demonstrative exhibits during trial.[21]

Prior to its restyling in 2011, Fed. R. Evid. 611(a) was identical to Neb. Evid. R. 611(1), Neb. Rev. Stat. § 27-611(1) (Reissue 2008). The 2011 amendments to the Federal Rules of Evidence were meant to be stylistic only.[22] Therefore, federal rule 611(a) remains substantively identical to § 27-611(1).

[4] Where a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule.[23] We thus begin by looking to the federal courts for guidance on the use of demonstrative exhibits during jury deliberations.

Of the 13 circuits, 10 permit demonstrative exhibits to be used by the jury during deliberations when certain circumstances are present. As will be explained below, these circumstances vary from the use of limiting instructions or other safeguards to consent of the parties.

---

[20] See, e.g., *U.S. v. Milkiewicz, supra* note 12; *U.S. v. Salerno, supra* note 18; *United States v. Downen, supra* note 18; *Shane v. Warner Mfg. Corp.*, *supra* note 18; *U.S. v. Hollie*, No. 98-1103, 1999 WL 1021860 (6th Cir. Nov. 3, 1999) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 198 F.3d 248 (6th Cir. 1999)).

[21] See, e.g., *U.S. v. Irvin*, 682 F.3d 1254 (10th Cir. 2012); *U.S. v. Milkiewicz, supra* note 12; *U.S. v. Taylor*, 210 F.3d 311 (5th Cir. 2000); *U.S. v. Salerno, supra* note 18; *U.S. v. Johnson, supra* note 18; *U.S. v. Pinto*, 850 F.2d 927 (2d Cir. 1988); *U.S. v. Possick*, 849 F.2d 332 (8th Cir. 1988); *United States v. Gardner*, 611 F.2d 770 (9th Cir. 1980); *United States v. Scales, supra* note 18.

[22] See Fed. R. Evid. 611(a), advisory committee note on 2011 amendment.

[23] *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003).

The most common prerequisite for the use of demonstrative exhibits during jury deliberations is the use of safeguards against prejudice. In the 2d,[24] 3d,[25] and 10th[26] Circuits, the only requirement for sending demonstrative exhibits to the jury room is the giving of a limiting instruction. The First Circuit also requires that trial courts employ adequate safeguards against prejudice, such as jury instructions, editing to remove prejudicial content, and opportunity for the exhibit's opponent "to expose his concerns to the jury."[27] In addition, trial courts in the First Circuit must determine that demonstrative exhibits would be useful to the jury.[28]

The remaining circuits that allow demonstrative exhibits to be used in jury deliberations each employ different approaches. The Fourth Circuit allows demonstrative exhibits to go to the jury during deliberations following the "proper admission of the summary chart into evidence."[29] The Fifth Circuit requires only consent of the parties.[30] The 11th Circuit has the most restrictive rule regarding the use of demonstrative exhibits in jury deliberations. It has held that it is an abuse of discretion to send demonstrative exhibits to the jury for use in deliberations in all circumstances except three: (1) where the exhibit is not hearsay, (2) where extensive cross-examination is allowed, or (3) where chain of custody is a contested issue.[31] In contrast to the 11th Circuit's precise rule, the 6th,[32] 7th,[33] and

---

[24] See *U.S. v. Casamento, supra* note 14.

[25] See *Shane v. Warner Mfg. Corp., supra* note 18.

[26] See, e.g., *United States v. Downen, supra* note 18.

[27] *U.S. v. Milkiewicz, supra* note 12, 470 F.3d at 400.

[28] See *id.*

[29] *U.S. v. Johnson, supra* note 18, 54 F.3d at 1161 n.11.

[30] See, e.g., *U.S. v. Harms, supra* note 13; *U.S. v. Taylor, supra* note 21.

[31] See *U.S. v. Pendas-Martinez*, 845 F.2d 938 (11th Cir. 1988).

[32] See, e.g., *United States v. Scales, supra* note 18; *U.S. v. Hollie, supra* note 20.

[33] See, e.g., *U.S. v. Salerno, supra* note 18; *United States v. Bernard*, 287 F.2d 715 (7th Cir. 1961).

8th[34] Circuits sometimes allow pedagogical exhibits to go to the jury during deliberations, but have no consistent rule. At one time or another, both the Seventh[35] and Eighth[36] Circuits have required limiting instructions.

In summary, although there is no uniform approach among the circuit courts, the use of limiting instructions is the most prevalent. Indeed, in the Fourth,[37] Fifth,[38] and Sixth[39] Circuits, limiting instructions or other safeguards must accompany demonstrative exhibits even when they are merely used or displayed in trial without being sent to the jury during deliberations.

### b. Case Law From Other States

Other states do not appear to have a unified approach to the use of demonstrative exhibits in jury deliberations. Courts in Massachusetts,[40] Missouri,[41] Pennsylvania,[42] and Wisconsin[43] leave the issue solely up to a trial judge's discretion. Several states allow demonstrative exhibits to be used during jury deliberations when appropriate safeguards are in place. Ohio requires limiting instructions.[44] In Illinois, the trial judge can send a demonstrative exhibit to the jury room once he or she

---

[34] See, e.g., *U.S. v. Possick, supra* note 21; *United States v. Warner, supra* note 18.

[35] See *United States v. Bernard, supra* note 33.

[36] See *U.S. v. Possick, supra* note 21.

[37] See, e.g., *U.S. v. Johnson, supra* note 18.

[38] See, e.g., *U.S. v. Ollison*, 555 F.3d 152 (5th Cir. 2009); *U.S. v. Ogba*, 526 F.3d 214 (5th Cir. 2008); *U.S. v. Taylor, supra* note 21.

[39] See, e.g., *U.S. v. Bray, supra* note 13; *United States v. Scales, supra* note 18.

[40] See *Com. v. Walter*, 10 Mass. App. 255, 406 N.E.2d 1304 (1980).

[41] See *State v. Yowell, supra* note 18.

[42] See *Commonwealth v. Moore*, 443 Pa. 364, 279 A.2d 179 (1971).

[43] See *State v. Olson*, 217 Wis. 2d 730, 579 N.W.2d 802 (Wis. App. 1998).

[44] See *In re Estate of Lucitte, supra* note 14.

has determined that the exhibit is not prejudicial.[45] Otherwise, the majority of states have not addressed this issue.

### (ii) Application to Nebraska Law

### a. Judicial Discretion of Trial Courts

As the foregoing discussion revealed, a common approach taken by many courts in other jurisdictions to the use of demonstrative exhibits in jury deliberations is to allow such use at the trial judge's discretion. This approach is consistent with Nebraska jurisprudence, which frequently addresses evidentiary matters to the trial judge's discretion.

[5] In Nebraska, "[a] trial judge has broad discretion over the conduct of a trial."[46] It is the judge's statutory duty to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."[47] The judge also possesses "inherent powers" that "include the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial."[48]

[6] In practice, a trial judge is called upon to make many decisions during the course of a trial based upon this broad discretion. The Nebraska Evidence Rules explicitly place many evidentiary matters at the discretion of the trial judge.[49] And the exercise of discretion "is implicit in decisions to admit evidence based on relevancy or admissibility."[50] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of

---

[45] See *People v. Manley, supra* note 18.

[46] *Connelly v. City of Omaha*, 278 Neb. 311, 319, 769 N.W.2d 394, 400 (2009).

[47] § 27-611(1).

[48] *Schindler v. Walker*, 256 Neb. 767, 779, 592 N.W.2d 912, 920 (1999).

[49] See, e.g., Neb. Evid. R. 104(1), Neb. Rev. Stat. § 27-104(1) (Reissue 2008); Neb. Evid. R. 106(2), Neb. Rev. Stat. § 27-106(2) (Reissue 2008); Neb. Evid. R. 201(3), Neb. Rev. Stat. § 27-201(3) (Reissue 2008); § 27-611(2); Neb. Evid. R. 705, Neb. Rev. Stat. § 27-705 (Reissue 2008).

[50] *Sack v. Castillo*, 278 Neb. 156, 164, 768 N.W.2d 429, 436 (2009).

discretion.[51] In addition, a trial judge is given the discretion to determine when a sufficient basis has been laid for lay opinion testimony,[52] when photographs can be admitted into evidence,[53] and when demonstrative exhibits can be used in trial.[54]

When it comes to matters regarding the jury, under Nebraska case law, the trial judge has discretion to allow the jury to reexamine evidence during deliberations.[55] Under this rule, "trial courts have broad discretion in allowing the jury to have unlimited access to properly received exhibits that constitute substantive evidence of the defendant's guilt."[56]

[7] In accordance with this broad discretion already accorded to trial courts, particularly in evidentiary matters, we believe that the submission of demonstrative exhibits to the jury during deliberations should be left to the discretion of the trial court. Accordingly, we hold that a trial judge may exercise his or her broad judicial discretion to allow or disallow the use of demonstrative exhibits during jury deliberations.

### b. Limits of Discretion

This discretion, however, is not unlimited. Despite their potential usefulness, demonstrative exhibits also carry the potential to prejudice the party against whom such exhibits are used.

If used improperly, demonstrative exhibits can distract the jury from considering all of the evidence presented, causing them instead to unfairly emphasize only portions of the evidence.[57] If all parties to a case do not submit demonstrative exhibits, the jury may be tempted to focus more heavily on the

---

[51] *Erickson v. U-Haul Internat.*, 278 Neb. 18, 767 N.W.2d 765 (2009).

[52] See *Childers v. Phelps County*, 252 Neb. 945, 568 N.W.2d 463 (1997).

[53] See *Steele v. Sedlacek*, 267 Neb. 1, 673 N.W.2d 1 (2003).

[54] See *American Central City v. Joint Antelope Valley Auth.*, *supra* note 3.

[55] See *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000).

[56] *State v. Pischel*, 277 Neb. 412, 427, 762 N.W.2d 595, 607 (2009).

[57] See, e.g., *United States v. Abbas*, 504 F.2d 123 (9th Cir. 1974); *State v. Lord*, *supra* note 14.

evidence to which it has "easy reference."[58] Because they are often prepared specifically for use in litigation, demonstrative exhibits can be tempting vehicles for conveying prejudicial language and assumptions[59] or inadmissible evidence[60] to the jury.

Furthermore, if not instructed on the limited purposes of demonstrative exhibits, the jury may assume that demonstrative exhibits constitute primary proof of the information contained therein, leading the jury to shirk its duty to determine the truth and accuracy of the evidence.[61] The jury may attribute undue weight or credibility to evidence summarized or illustrated in demonstrative exhibits.[62] Or a jury may find the simplicity with which demonstrative exhibits present complex or technical information to be compelling and persuasive.[63] On the other hand, demonstrative exhibits that are not properly explained may ultimately confuse or mislead the jury.[64]

---

[58] See, e.g., *U.S. v. Casoni*, 950 F.2d 893, 916 (3d Cir. 1991). Accord, *United States v. Ware*, 247 F.2d 698 (7th Cir. 1957); *Steele v. United States*, 222 F.2d 628 (5th Cir. 1955); *Thomas v. State*, 259 Ind. 537, 289 N.E.2d 508 (1972) (superseded by rule on other grounds as stated in *Litherland v. McDonnell*, 796 N.E.2d 1237 (Ind. App. 2003)).

[59] See, e.g., *U.S. v. Irvin, supra* note 21; *U.S. v. Taylor, supra* note 21; *United States v. Lemire*, 720 F.2d 1327 (D.C. Cir. 1983) (superseded by statute on other grounds as stated in *U.S. v. Sun-Diamond Growers of California*, 941 F. Supp. 1262 (D.D.C. 1996)); *U.S. v. Gazie*, Nos. 83-1851, 83-1852, 83-1860, 1986 WL 16498 (6th Cir. Feb. 26, 1986) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 786 F.2d 1166 (6th Cir. 1986)); *Vanlandingham v. Gartman*, 236 Ark. 504, 367 S.W.2d 111 (1963).

[60] See, e.g., *United States v. Lemire, supra* note 59.

[61] See, e.g., *U.S. v. Baker*, 10 F.3d 1374 (9th Cir. 1993), *overruled on other grounds, U.S. v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *United States v. Scales, supra* note 18; *Baines v. United States*, 426 F.2d 833 (5th Cir. 1970); *United States v. Ellenbogen*, 365 F.2d 982 (2d Cir. 1966).

[62] See, e.g., *Sanchez v. United States*, 293 F.2d 260 (8th Cir. 1961); *Smith v. Ohio Oil Co., supra* note 14.

[63] See, e.g., *U.S. v. Irvin, supra* note 21; *Elder v. United States*, 213 F.2d 876 (5th Cir. 1954).

[64] See, e.g., *United States v. Citron*, 783 F.2d 307 (2d Cir. 1986); *U.S. v. Gazie, supra* note 59.

[8] Given the possibility for such forms of prejudice, a trial judge must carefully consider the potential prejudice that may arise from the use of demonstrative exhibits during jury deliberations. Each demonstrative exhibit must be considered individually, because both the usefulness of a demonstrative exhibit and the potential prejudice arising from its use will depend on the form and substance of each particular exhibit. We note that a trial court is already required to weigh these considerations before allowing the use of demonstrative exhibits in trial.[65] We now hold that the trial judge must do so again before allowing the jury to use a demonstrative exhibit during deliberations. It is an abuse of discretion for a trial judge to send a demonstrative exhibit to the jury for use in deliberations without first weighing the potential prejudice in allowing such use against the usefulness of the exhibit and employing adequate safeguards to prevent prejudice.

### c. Common Safeguards

Significantly, many of the dangers in allowing the use of demonstrative exhibits in jury deliberations stem from the improper use of such exhibits or a disregard for their limited purpose. As such, these dangers often can be avoided by the use of limiting instructions that advise a jury of the limited purpose for which demonstrative exhibits should be employed. As noted earlier, the limiting instruction is the most prevalent safeguard used by the circuit courts. Moreover, several circuits have held that limiting instructions can limit[66] or even eliminate[67] the harms posed by demonstrative exhibits.

In addition to jury instructions, there are other safeguards that can be employed to limit the prejudice that will result from allowing the jury to use demonstrative exhibits in deliberations. These safeguards include requiring the proponent of the exhibit to lay foundation for its use outside the presence

---

[65] See *State v. Daly, supra* note 6.

[66] See, e.g., *U.S. v. Bishop*, 264 F.3d 535 (5th Cir. 2001); *U.S. v. Francis*, 131 F.3d 1452 (11th Cir. 1997).

[67] See, e.g., *United States v. Cox*, 633 F.2d 871 (9th Cir. 1980); *Sanseverino v. United States*, 321 F.2d 714 (10th Cir. 1963).

of the jury,[68] having the individual who prepared the exhibit testify concerning the exhibit,[69] allowing extensive cross-examination of the individual who prepared the exhibit,[70] giving the opponent of the exhibit the opportunity to examine the exhibit prior to its admission and to identify errors,[71] excising prejudicial content prior to submitting the exhibit to the jury,[72] and giving the opposing side the opportunity to present its own exhibit.[73]

As noted above, the prejudicial potential of any particular demonstrative exhibit will vary depending on the exhibit. Having presided over the presentation of evidence, the trial judge should exercise sound discretion to ensure that adequate safeguards are present to prevent that prejudice.

### (d) Application to
### Instant Appeal

In the instant case, the district court employed no safeguards against prejudice before allowing the jury to use exhibit 36 during its deliberations. Exhibit 36 was "admitted" for use during trial in a pretrial conference, employed by the State in its opening statement, and used repeatedly throughout the trial. Yet, the court never informed the jury that exhibit 36 had been admitted for demonstrative purposes only or explained the proper purposes for which the jury might use a demonstrative exhibit. Although the State erroneously informed the jury in its opening statement that Pangborn had "stipulated" to exhibit 36, the court did not correct the implication that Pangborn agreed

---

[68] See, e.g., *U.S. v. Baker, supra* note 61; *United States v. Lemire, supra* note 59; *United States v. Bartone*, 400 F.2d 459 (6th Cir. 1968).

[69] See, e.g., *United States v. Cox, supra* note 67; *United States v. Ware, supra* note 58; *Lloyd v. United States*, 226 F.2d 9 (5th Cir. 1955); *State v. Lord, supra* note 14.

[70] See, e.g., *U.S. v. Baker, supra* note 61; *United States v. Lemire, supra* note 59; *State v. Lord, supra* note 14; *State v. Olson, supra* note 43.

[71] See, e.g., *U.S. v. Baker, supra* note 61.

[72] See, e.g., *U.S. v. Irvin, supra* note 21; *Stachowiak v Subczynski*, 411 Mich. 459, 307 N.W.2d 677 (1981) (per curiam).

[73] See, e.g., *U.S. v. Baker, supra* note 61; *State v. Lord, supra* note 14.

with the substantive content of the exhibit or take the opportunity to instruct the jury regarding the proper use of the exhibit. And even when submitting the case for the jury's consideration and sending all the exhibits to the jury room, the court failed to provide a jury instruction that exhibit 36 was admitted for demonstrative purposes only and specifically instruct the jury as to the proper purpose for use of the exhibit. In effect, the court gave the jury unlimited access to exhibit 36—a clear and concise "road map" of the State's entire case against Pangborn and upon which the State had relied significantly during the presentation of evidence—without limiting or guiding the jury's use of that exhibit.

We conclude that the district court abused its discretion in permitting the jury to use exhibit 36 during its deliberations without providing a limiting instruction. That is not to say that a limiting instruction is always required; however, except in the rare case where other safeguards combine to make the limited purpose of the demonstrative exhibit abundantly clear to the jury, an appropriate limiting instruction will be necessary to avoid unfair prejudice.

### (e) Harmless Error
### Analysis

[9-12] Errors, other than structural errors, which occur within the trial and sentencing process, are subject to harmless error review.[74] Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.[75] In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.[76] Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that

---

[74] *State v. Pathod*, 269 Neb. 155, 690 N.W.2d 784 (2005).

[75] *State v. Ford*, 279 Neb. 453, 778 N.W.2d 473 (2010).

[76] *Id.*

occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[77]

Due to the complete absence of safeguards employed in the instant case when erroneously submitting the demonstrative exhibit to the jury, we cannot say that this error was harmless. Because the jury was never informed that exhibit 36 was admitted for only demonstrative purposes, it had no way of knowing that the standard instruction on exhibits admitted for limited purposes applied to the exhibit. And without any sort of guidance from the district court, the jury did not know that exhibit 36 was not substantive evidence of Pangborn's guilt.

The State argues that the jury's acquittal of Pangborn on 1 of 10 counts reflects that "the jury was not unduly influenced by Exhibit 36."[78] We find this argument to be logically flawed. Even assuming that the acquittal on one count shows that the jury did not take exhibit 36 as proof of Pangborn's guilt on that single count, each count was based on separate factual allegations. A verdict of "not guilty" on one count has no relation to the other counts and does not preclude the possibility that exhibit 36 substantially influenced the jury's decision on the other counts.

We cannot say that the jury's guilty verdicts were surely unattributable to the act of sending exhibit 36 to the jury during deliberations without a proper limiting instruction. We reverse Pangborn's convictions and remand the cause for a new trial.

## 2. New Trial

[13] The Double Jeopardy Clauses of the federal and state Constitutions do not forbid a retrial after an appellate determination of prejudicial error in a criminal trial so long as the sum of all the evidence admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a

---

[77] *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012).

[78] Brief for appellee at 11.

guilty verdict.[79] Having reviewed the entirety of the evidence admitted in this case, we note that numerous individuals testified that they witnessed the crimes of which Pangborn was charged. There also was evidence that called into question Pangborn's alibi defense. We find that there was sufficient evidence to sustain the verdict on each count where he was found guilty. Therefore, retrial is permissible on those nine counts.

### 3. Other Assignments of Error

[14] Having found that the district court's decision to allow the jury to use exhibit 36 during deliberations without a limiting instruction or other safeguards was reversible error, we do not reach any of Pangborn's other assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[80]

[15] Because we do not believe that the evidentiary foundation for exhibits 37 and 38 will be identical upon retrial, we do not discuss Pangborn's arguments regarding these two exhibits. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[81] We think it is quite likely upon retrial and in the light of Pangborn's arguments in this appeal that the State may choose to offer other or additional foundational evidence in support of these exhibits. Thus, it is unlikely that the issues will arise in the same posture, and we decline to address the issue.

## VI. CONCLUSION

We hold that a trial judge may exercise his or her broad judicial discretion to allow or disallow the use of demonstrative exhibits during jury deliberations. But given the prejudice

---

[79] *State v. Riley*, 281 Neb. 394, 796 N.W.2d 371 (2011).

[80] *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013).

[81] *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012).

that can arise from the use of demonstrative exhibits in jury deliberations, this discretion is not unlimited. Due to the lack of limiting instructions and the complete absence of safeguards employed in the instant case, the district court abused its discretion in allowing the jury to use the State's "road map" of its case—admitted for demonstrative purposes only—during deliberations without giving a limiting instruction. We find this error to be prejudicial. Therefore, we reverse the judgment and remand the cause for a new trial.

Reversed and remanded for a new trial.

Connolly and Miller-Lerman, JJ., participating on briefs.